Mick McCARTER, Appellant,

v.

ALASKA NATIONAL INSURANCE COMPANY, Appellee.

No. S–5746.

Supreme Court of Alaska.

Nov. 4, 1994.

Steven L. Hempel, Mark Clayton Choate Law Offices, Juneau, for appellant.

Randall J. Weddle and Matthew D. Regan, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellee.

Christine Schleuss, Anchorage, for amicus curiae Alaska Academy of Trial Lawyers.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

*OPINION*

RABINOWITZ, Justice.

## I. *FACTS AND PROCEEDINGS*

Mick McCarter was employed as a "flagger" at a highway construction site for Wilderness Women, Inc. Edward Hanousek, III struck and injured McCarter while driving a vehicle past the site. Wilderness Women, Inc.'s insurance carrier, Alaska National, Inc. (ANI), paid McCarter workers' compensation benefits amounting to $11,936.

McCarter sued Hanousek for negligence. Because Hanousek himself had few assets, McCarter settled with Hanousek's insurer for $50,000 (the policy limit) plus Civil Rule 82 attorney's fees of $7,500. McCarter argued before the superior court, and argues

here, that this settlement did not fully compensate him for his injuries.

Alaska workers' compensation law requires a person who both receives workers' compensation benefits and recovers damages from a third party to reimburse the employer or the employer's insurance carrier for the costs of all benefits actually furnished and all amounts paid as compensation, as well as to reimburse the state for any second injury fund payments:

> If the employee or the employee's representative recovers damages from the third person, the employee or representative shall promptly pay to the employer the total amounts paid by the employer under (e)(1)(A), (B), and (C) of this section, insofar as the recovery is sufficient after deducting all litigation costs and expenses. Any excess recovery by the employee or representative shall be credited against any amount payable by the employer thereafter.

AS 23.30.015(g).

ANI asserted that this provision entitled it to the full amount of compensation paid and benefits furnished to McCarter, less a pro rata share of McCarter's litigation costs and expenses. After McCarter failed to reimburse ANI, ANI filed a complaint for declaratory judgment and other relief. Thereafter, ANI moved for summary judgment. McCarter subsequently asked the superior court to certify him as a public interest litigant. His motion was denied. The superior court allowed the Alaska Academy of Trial Lawyers (AATL) to participate as amicus curiae. The superior court then entered a memorandum and order granting ANI's motion for summary judgment. McCarter once again requested to be certified as a public interest litigant. The court again denied him public interest litigant status and awarded ANI attorney's fees in the amount of $1,500. Final judgment was entered against McCarter for the compensation he received in the amount of $11,936 plus attorney's fees of $1,500.

McCarter appeals from that judgment, claiming that (1) the superior court erred in its failure to recognize an exception

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

to AS 23.30.015(g) where the employee does not receive a "double recovery,"[1] and (2) the superior court should have granted him public interest litigant status.

## II. DISCUSSION

### A. Interpretation of AS 23.30.015(g)

■ McCarter's first argument is that the legislature never intended AS 23.30.015(g) to apply to cases like his.[2] McCarter notes that the statutory scheme was intended to establish an employer's exclusive liability, not an employee's exclusive remedy, citing *Miller v. Northside Danzi Constr. Co.*, 629 P.2d 1389 (Alaska 1981). His statement is accurate, but it is not inconsistent with summary judgment for ANI. Subsections 23.30.015(a) and (g), as fairly read and applied by the superior court, allow pursuit of multiple remedies.[3] These provisions do not require McCarter to waive any third-party claims in order to receive compensation and benefits from the insurance company. McCarter was able to sue Hanousek without jeopardizing the payments ANI had already made to him.

Nor did the workers' compensation award represent the maximum amount he could recover. By pursuing Hanousek, McCarter was able to increase his total recovery from less than $12,000 to $50,000. Thus, subsection (g) does not, as McCarter asserts, conflict with subsection (a), which provides that employees need not choose between remedies.

The purpose of subsection (g), according to McCarter, is to prevent "double recoveries," meaning a recovery in excess of the worker's total losses. It can also be argued that the statute prevents a "double recovery" where "double recovery" means cumulative recoveries from two different entities. McCarter simply fails to demonstrate that the legislature intended to prevent "double recoveries," as he uses the term. Nothing in the text of AS 23.30.015 supports McCarter's double recovery theory.

■ AATL makes an additional textual argument. It observes that subsection (f) requires employers to make payments even when the employees bring third-party actions, and posits that this provision is pointless if the employee must reimburse the employer. This is mistaken for two reasons. First, resolution of litigation can be protracted and subsection (f) ensures prompt payment. Second, the third-party litigation may be unsuccessful, and the risks for the employee would be much greater if employer payments of compensation and benefits would be forfeited by the institution of a third-party suit by the employee.[4]

■ A final argument that AATL makes is that this court should look, as it did in *Cooper v. Argonaut Insurance Cos.*, 556 P.2d 525, 527 n. 10 (Alaska 1976), to the "analogous situation" of equitable subrogation. Courts generally do not allow equitable subrogation until the insured has been fully compensated for its loss. See *Garrity v. Rural Mut. Ins. Co.*, 77 Wis.2d 537, 253 N.W.2d 512, 514 (1977).

We observe that *Cooper* did not state that the law of equitable subrogation should be the touchstone for all questions that arise in workers' compensation law. Rather, we cit-

---

1. Statutory interpretation and constitutional challenges are questions of law reviewed *de novo*. See *Langdon v. Champion*, 752 P.2d 999, 1001 (Alaska 1988). An award of attorney's fees is committed to the sound discretion of the trial court and will not be disturbed unless manifestly unreasonable. *CTA Architects of Alaska, Inc. v. Active Erectors & Installers, Inc.*, 781 P.2d 1364, 1365 (Alaska 1989).

2. For purposes of this appeal, we assume that McCarter's loss exceeded $50,000.

3. AS 23.30.015(a) provides:

 If on account of disability or death for which compensation is payable under this chapter the person entitled to the compensation believes that a third person other than the employer or a fellow employee is liable for damages, the person need not elect whether to receive compensation or to recover damages from the third person.

4. In *Forest v. Safeway Stores, Inc.*, 830 P.2d 778, 781 (Alaska 1992), we said:

 The clear purpose of [AS 23.30.015(a)] is to allow employees to seek damages from third-party tortfeasors without jeopardizing their compensation while, at the same time, allowing employers to share in damage awards up to the limit of their exposure under the workers' compensation law.

ed equitable subrogation law to support our view that a carrier would be unjustly enriched if it could share in the benefits of a third-party suit without sharing in the litigation costs. *Cooper*, 556 P.2d at 527 & n. 10.

■ Moreover, *Cooper* considered equity and policy arguments in order to construe statutory language that was reasonably susceptible to more than one meaning. *See Cooper*, 556 P.2d at 526. Generally, when the statutory language is unambiguous, as it is here, we will not modify or extend the statute. *Yahara v. Construction & Rigging, Inc.*, 851 P.2d 69, 72 (Alaska 1993); *Zoerb v. Chugach Elec. Ass'n, Inc.*, 798 P.2d 1258, 1260 (Alaska 1990); *see, e.g., Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426, 440 (Alaska 1979) (refusing to reduce an employer's reimbursement to reflect the employer's negligence). Thus, we conclude that the superior court's decision requiring reimbursement is consistent with the command of AS 23.30.015(g).[5]

**B.** *Constitutional Issues*

■ McCarter alternatively contends that if the superior court construed AS 23.30.015(g) correctly, the statute is unconstitutional. He maintains that his right to pursue a third-party suit is meaningless if he cannot keep any of the proceeds, and thus he would be denied access to the courts. Yet unless the third-party recovery is less than the worker's compensation payments, which is not the case here, the injured worker can keep proceeds from the third-party action after reimbursing the employer or its carrier for all compensation and benefits received less the employer's pro rata portion of the litigation costs incurred in the third-party litigation. Though there may be cases in which the recovery is less than the payments, McCarter cites no authority for the proposition that it is of constitutional significance for one's liabilities to consume the proceeds of a particular third-party recovery.[6]

■ McCarter also asserts that AS 23.30.015(g) violates substantive due process.[7] Although he maintains that subsection

---

5. It is also consistent with the federal Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., on which the Alaska's Workers' Compensation Act is modeled. Section 933(g)(4) states:

Any payments by a trust fund described in section 917 of this title shall be a lien upon the proceeds of any settlement obtained from or judgment recorded against a third person....

Section 917 of that Act states:

Where a trust fund which complies with section 186(c) of Title 29 established pursuant to a collective-bargaining agreement in effect between an employer and an employee covered under this chapter has paid disability benefits to an employee which the employee is legally obligated to repay by reason of his entitlement to compensation under this chapter or under a settlement, the Secretary shall authorize a lien on such compensation in favor of the trust fund for the amount of such payments.

See *I.T.O. Corp. v. Sellman*, 954 F.2d 239, 241–42 (4th Cir.), *reh'g*, 967 F.2d 971 (4th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993); *see also Force v. Director, Office of Workers' Compensation Programs*, 938 F.2d 981, 983 (9th Cir.1991); *Brandt v. Stidham Tire Co.*, 785 F.2d 329, 331 (D.C.Cir.1986).

Our decision is in line with what other states have done as well: they have consistently refused to modify statutory distribution terms similar to subsection (g) in the name of equity. *See, e.g., Young v. Industrial Comm'n*, 146 Ariz. 582, 583, 707 P.2d 986, 987 (App.1985); *Laureano v. New*

*Jersey Transit Bus Operations, Inc.*, 220 N.J.Super. 295, 531 A.2d 1361 (1987), *cert. denied*, 110 N.J. 176, 540 A.2d 174 (1988); *Maxey v. Department of Labor & Indus.*, 114 Wash.2d 542, 789 P.2d 75 (1990). *See generally* 2A Arthur Larson, *Larson's Workmen's Compensation Law* § 74.31(b) (1993) (discussing this issue and citing cases from 33 states and several federal courts).

6. *Cf. Wright v. Action Vending Co.*, 544 P.2d 82, 86–87 (Alaska 1975) (upholding the constitutionality of the Act's exclusive liability provision against a claim that it deprived the spouse of an injured worker of a right to sue for loss of consortium); *see also Taylor v. Southeast–Harrison W. Corp.*, 694 P.2d 1160 (Alaska 1985) (upholding the constitutionality of the Act's differential treatment of deceased employees with dependent survivors).

7. In *Municipality of Anchorage v. Leigh*, 823 P.2d 1241 (Alaska 1992), this court discussed the analysis for determining the constitutionality of a workers' compensation statute.

Substantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose. It is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people. The constitutional guaran-

(g) is irrational in this case, he acknowledges the legitimacy of its underlying purpose: it ensures that workers are compensated at acceptable rates for their work-related injuries, while minimizing employers' liability in cases where the workers have remedies against third-parties. Thus, he cannot meet his heavy burden of "demonstrating that no rational basis for the challenged law exists." *See Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974).

■ McCarter's procedural due process argument is that, through the statutory scheme, "the injured worker is deprived of a previously available right—to pursue the third party and retain an equitable portion of the proceeds recovered from the third party." Yet he does not allege that the procedures in this case were inadequate. Instead, he attacks the legislative policy underlying the Act but does not allege that the workers' compensation act was enforced arbitrarily. Thus, he has failed to state a valid procedural due process claim.

■ McCarter's equal protection argument is equally misguided. He contends that strict scrutiny applies but that subsection (g) would fail any level of scrutiny. Strict scrutiny, however, is not appropriate.[8] As explained above, he has not been denied access to the courts; and there is no "Consti-

tutional right to retain the proceeds of a third party settlement where the amount of the settlement plus the compensation benefits do not grant full legal redress to the injured worker."[9] The statute implicates no fundamental right.[10] More important, as noted above, there is a rational basis for AS 23.30.015 in general and subsection (g) in particular.

### C. Public Interest Litigant Status

■ McCarter argues that the superior court should have accorded him public interest litigant status. He acknowledges the requirement that a public interest litigant lack a sufficient economic incentive to bring the suit in the absence of the issues of general importance. *See Oceanview Homeowners Ass'n v. Quadrant Constr. & Eng'g,* 680 P.2d 793, 799 (Alaska 1984). McCarter is seeking to retain approximately $13,500; his assertion that he is a public interest litigant is unpersuasive.

**AFFIRMED.**

---

tee of substantive due process assures only that a legislative body's decision is not arbitrary but instead based upon some rational policy.

A court's inquiry into arbitrariness begins with the presumption that the action of the legislature is proper. The party claiming a denial of substantive due process has the burden of demonstrating that no rational basis for the challenged legislation exists. This burden is a heavy one, for if any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification.

*Id.* at 1244 (quoting *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974)).

8. Workers' compensation benefits reflect economic interests, and therefore, are entitled only to minimum protection under this court's equal protection analysis. *Sonneman v. Knight,* 790 P.2d 702, 704–05 (Alaska 1990) (rejecting argument that unemployment compensation benefits

are an inherent fundamental right); *see also State v. Anthony,* 810 P.2d 155, 158 (Alaska 1991), *reh'g granted,* 816 P.2d 1377 (Alaska 1991) (holding that a permanent fund dividend is an economic interest subject to minimum protection).

9. McCarter cites a Montana case, *Francetich v. State Compensation Mutual Insurance Fund,* 252 Mont. 215, 827 P.2d 1279 (1992), that invalidated a statutory provision similar to Alaska's. The Montana Constitution, however, contains a provision specifically guaranteeing injured workers the proceeds of third-party actions. *Francetich,* 827 P.2d at 1282. *Francetich* is therefore distinguishable.

10. McCarter points to another fundamental right: equal protection of the laws. The argument that equal protection analysis in this case must involve strict scrutiny because the fundamental right to equal protection is implicated constitutes a totally circular, unpersuasive argument.